UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESTON L. SKINNER, II,          U.S. District Court No. 5:18-cv-12708

        Plaintiff,          Honorable Judith E. Levy
                            Magistrate Mona K. Majzoub

v.

MICHIGAN ROD PRODUCTS, INC.,

        Defendant.
_____/

| | |
|---|---|
| BATEY LAW FIRM, PLLC | KIENBAUM HARDY VIVIANO |
| Scott P. Batey (P54711) | PELTON & FORREST, P.L.C. |
| Attorney for Plaintiff | By: Julia Turner Baumhart (P49173) |
| 30200 Telegraph Road, Ste. 400 |    Joseph C. Pagano (P57107) |
| Bingham Farms, MI 48025 |    Ryan D. Bohannon (P73394) |
| (248) 540-6800 | Attorneys for Defendant |
| (248) 540-6814 | 280 N. Old Woodward Avenue |
| sbatey@bateylaw.com | Suite 400 |
| | Birmingham, MI 48009 |
| | (248) 645-0000 |
| | jbaumhart@khvpf.com |
| | jpagano@khvpf.com |
| | rbohannon@khvpf.com |

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Michigan Rod Products ("Defendant") by and through its undersigned counsel, requests that the Court enter summary judgment in its favor, pursuant to Federal Rule of Civil Procedure 56, and dismiss Plaintiff's Complaint in its entirety with prejudice.  Defendant relies upon the accompanying brief and exhibits in support of its motion for summary judgment.

On October 30, 2019, Defendant's counsel sought concurrence from Plaintiff's counsel, explaining the nature of the motion and its legal basis. Plaintiff's counsel did not concur, necessitating this motion.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By:/s/Joseph C. Pagano
   Julia Turner Baumhart (P49173)
   Joseph C. Pagano (P57107)
   Ryan D. Bohannon (P73394)
Attorneys for Defendant
280 N. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
(248) 645-0000
jbaumhart@khvpf.com
jpagano@khvpf.com
rbohannon@khvpf.com

Dated:  October 31, 2019

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESTON L. SKINNER, II,              U.S. District Court No. 5:18-cv-12708

    Plaintiff,              Honorable Judith E. Levy
             Magistrate Mona K. Majzoub

v.

MICHIGAN ROD PRODUCTS, INC.,

    Defendant.
_____/

| | |
|---|---|
| BATEY LAW FIRM, PLLC | KIENBAUM HARDY VIVIANO |
| Scott P. Batey (P54711) | PELTON & FORREST, P.L.C. |
| Attorney for Plaintiff | By: Julia Turner Baumhart (P49173) |
| 30200 Telegraph Road, Ste. 400 |  Joseph C. Pagano (P57107) |
| Bingham Farms, MI 48025 |  Ryan D. Bohannon (P73394) |
| (248) 540-6800 | Attorneys for Defendant |
| (248) 540-6814 | 280 N. Old Woodward Avenue |
| sbatey@bateylaw.com | Suite 400 |
| | Birmingham, MI 48009 |
| | (248) 645-0000 |
| | jbaumhart@khvpf.com |
| | jpagano@khvpf.com |
| | rbohannon@khvpf.com |

_____/

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................i

STATEMENT OF ISSUES PRESENTED.................................................iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES..........................iv

INDEX OF AUTHORITIES...................................................................v

I.  INTRODUCTORY STATEMENT ...................................................1

II.  FACTUAL STATEMENT ..............................................................2

    A.  The Parties ..........................................................................2

    B.  Plaintiff's Employment with Defendant. ..................................4

        1.  Plaintiff's admitted violation of Defendant's shop rules. ..........................................................................6

        2.  Reported workplace drug sales by Plaintiff and Defendant's ensuing investigation under the Agreement, Section XX, Paragraph 37.......................7

    C.  Plaintiff Files EEOC Charge Alleging A Single "Discriminatory" Event – His Discharge – Then Blames The EEOC For Not Including Alleged Racial Harassment.......................12

        1.  Plaintiff's unsupported claims of racial harassment..................................................................13

III.  STANDARD FOR SUMMARY JUDGMENT ...................................13

IV.  LEGAL ARGUMENT..................................................................14

    A.  Plaintiff's Discrimination Claims Fail. ..................................14

        1.  Standard of Proof In Disparate Treatment Cases. ..................14

        2.  Plaintiff Cannot Establish a *Prima Facie* Case Because There Were No Circumstances From Which Race Discrimination Could Be Legitimately Inferred. ..............................................16

3.      Plaintiff Cannot Show That The Legitimate Non-Discriminatory Reason For the Challenged Employment Action Is Pretextual. ............................................18

B.      Plaintiff Cannot Succeed On A Race Stereotyping Theory. ...............22

V.   CONCLUSION ..................................................................................................24

## STATEMENT OF ISSUES PRESENTED

1.   Whether Plaintiff's discrimination claims fail because he cannot establish a *prima facie* case where no circumstances from which discrimination could be legitimately inferred?

2.   Should Plaintiff's pretext argument fail where he cannot demonstrate that Defendant's legitimate non-discriminatory reason for the discharge was false or that the real reason was Plaintiff's race?

3.   Whether Plaintiff's claim for race stereotyping should be dismissed where the facts prove that Plaintiff's race was not a motivating factor in the decision to terminate his employment?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Chen v. Dow Chemical Co*., 580 F.3d 394 (6th Cir. 2009)

*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)

*Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274 (6th Cir. 2012)

*White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008)

*Wright v. Murray Guard, Inc.*, 455 F.3d 702, 711-12 (6th Cir. 2006)

# INDEX OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................14

*Chen v. Dow Chemical Co.*,
580 F.3d 394 (6th Cir. 2009) ..................................................... 19, 21

*Desert Palace, Inc. v. Costa*,
539 U.S. 90 (2003) ..........................................................................23

*Dubey v. Stroh Brewery Co.*,
185 Mich. App. 561 (1990) ...............................................................19

*Fuhr v. Hazel Park School District*,
710 F.3d 668 (6th Cir. 2013) ............................................................15

*Hazel v. Ford Motor Co.*,
464 Mich. 456 (2001) ................................................................. 16, 19

*Hedrick v. Western Reserve Care System*,
355 F.3d 444 (6th Cir. 2004) ............................................................20

*Larsen v. City of Beloit*,
130 F.3d 1278 (7th Cir. 1997) ...........................................................17

*Loyd v. Saint Joseph Mercy Oakland*,
766 F.3d 580 (6th Cir. 2014) ............................................................21

*Lytle v. Malady* (On Rehearing),
458 Mich. 153 (1998) ............................................................ 15, 16, 17

*Majewski v. Automatic Data Processing, Inc.*,
274 F.3d 1106 (6th Cir. 2001) ...........................................................21

*Martin v. Ohio Tpk. Comm'n*,
968 F.2d 606 (6th Cir. 1992) ............................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................14

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1972) ...........................................................................................15

*Michigan Protection and Advocacy Service, Inc. v. Babin,*
    18 F.3d 337 (6th Cir. 1994) ...............................................................................14

*Mitchell v. Toledo Hosp.*,
    964 F.2d 577 (6th Cir. 1992) ....................................................................... 15, 17

*Pierce v. Commonwealth Life Ins. Co.*,
    40 F.3d 796 (6th Cir. 1994) ...............................................................................17

*PriceWaterhouse v. Hopkins*,
    490 U.S. 228 (1989) ...........................................................................................23

*Seeger v. Cincinnati Bell Tel. Co.*,
    681 F.3d 274 (6th Cir. 2012) ..............................................................................21

*Smith v. Goodwill Indus. of West Michigan, Inc.*,
    243 Mich. App. 438 (2000) ................................................................................17

*Sniecinski v. Blue Cross & Blue Shield of Michigan*,
    469 Mich. 124 (2003) .........................................................................................15

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993) ...........................................................................................16

*Tingle v. Arbors at Hilliard*,
    692 F.3d 523 (6th Cir. 2012) ..............................................................................19

*Town v. Michigan Bell Tel. Co.*,
    455 Mich. 688 (1997) ............................................................................. 15, 16, 17

*Weeks v. Samsung Heavy Indus. Co.*,
    126 F.3d 926 (7th Cir. 1997) ....................................................................... 17, 18

*Wells-Griffin v. St. Xavier Univ.*,
    26 F.Supp.3d 785 (N.D. Ill. 2014).....................................................................24

*White v. Baxter Healthcare Corp.*,
    533 F.3d 381 (6th Cir. 2008) ....................................................................... 15, 16

*Wright v. Murray Guard, Inc.*,
   455 F.3d 702 (6th Cir. 2006) ......................................................... 23, 24

**Statutes**

42 U.S.C. § 2000 *et seq.* ...........................................................................1, 15

42 U.S.C. § 2000e-2(a)(1) ........................................................................22

M.C.L. 37.2101 *et seq* ..............................................................................1, 15

**Rules**

Federal Rule of Civil Procedure 56 ...................................................1, 24

## I.      INTRODUCTORY STATEMENT

Plaintiff Preston Skinner's two-count complaint of race discrimination and race stereotyping in violation of Title VII, 42 U.S.C. § 2000 *et seq.* and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. 37.2101 *et seq.* presents this Court with a straightforward issue to decide:  Whether the decision by Plaintiff's employer Defendant Michigan Rod Products ("Defendant") to terminate Plaintiff's employment based on its reports that Plaintiff, an African-American, was selling drugs at work in violation of Defendant's "zero tolerance" policy was discriminatory?  Because Defendant's decisional process in enforcing its policy was based on its honest belief that Plaintiff was selling drugs at work, Plaintiff cannot show his termination was pretext for discrimination. Plaintiff's Complaint should therefore be summarily dismissed. [1]

Contrary to Plaintiff's unsupported claims, the *undisputed* record is that Defendant received information from three sources that Plaintiff was selling drugs at work.  In addition, Plaintiff *admitted* he was aware of the policy and knew he would be fired if he violated it.   And Defendant had not received any other complaints about employees selling drugs at work.  All of the evidence is that at no time did Defendant consider Plaintiff's race in making its decision to terminate

---

[1] Plaintiff's Complaint does not allege a count of racial harassment under either statute, and he has never amended his Complaint to add that claim.  His claims therefore are solely ones of disparate treatment in the discharge decision.

Plaintiff's employment for violating its policy.   Therefore, Plaintiff's Complaint should be dismissed.

## II.   FACTUAL STATEMENT

### A.   The Parties

Defendant is a leading manufacturer of fasteners, wire formed products and assemblies, located in Howell, Michigan.   Defendant contracts with the U.S. Military to produce highly sensitive products (Exhibit 1, Ed Lumm Deposition, at pp. 18-19).   Ed Lumm, Defendant's President since 2004, explained that Defendant is a highly technical manufacturer where workers are required to know how to set up and operate different types of machinery (Exhibit 1, at 6, 11).   Defendant employs approximately 100 workers who perform a number of jobs including operating threader machines, operating rolling and pointing machines, and performing other various cold metal forming operations (Exhibit 1, at 6, 15, 18).   Because almost all jobs require machine operations, new employees must achieve a minimum score of 70% on the Bennett Mechanical Comprehension Test (Exhibit 1, at 8-10).   Defendant rarely hires individuals with a score of lower than 70% (Exhibit 1, at 10-11, 14).

Plaintiff is a 31-year-old African-American male currently living in Flint, Michigan (Tr. 9, 17-18).[2]  His background is spotty, elusive, and involves sporadic run-ins with multiple branches of law enforcement.  This backdrop, along with some outlandish claims in this case, directly call into question his motives for bringing this Complaint.

Since 2009, for example, Plaintiff has resided in at least six to eight separate residential addresses in Ohio and Michigan (Tr. 17-22).  Despite representations to Defendant and other potential employers to the contrary, he does not have a high school diploma or GED, and does not remember when he last attended high school (Tr. 36-38).  He claims to have attended Baker College, but has no idea as to when or how long he actually attended the school (Tr. 39).

Plaintiff's law enforcement history includes a 2009 domestic violence conviction that involved Plaintiff choking and striking his girlfriend several times with his fist (Exhibit 3, 2009 Police Report).  Plaintiff also hit her with a TV and pulled a knife and threatened to kill her. *Id*.  In 2018, Plaintiff's wife reported to police that Plaintiff punched her in the back of her neck and on her face, forced her head onto the concrete driveway, pushed his knee into her throat, and bit her right

---

[2] References to "Tr. __" are to Plaintiff's deposition, a copy of which is attached as Exhibit 2.

arm, drawing blood.  (Exhibit 4, 2018 Police Report).  Incredibly, *Plaintiff couldn't recall either incident* (Tr. 191-92).[3]

### B.   Plaintiff's Employment with Defendant.

In August of 2014, Express Employment, a staffing company that employed Plaintiff sporadically, sent him to Defendant to work as a sorter (Tr. 67-68; Exhibit 5, Tim Brown Deposition, at p. 7).  Tim Brown, Defendant's Manufacturing Vice President, explained that Defendant does not itself hire sorters (Exhibit 5, at 7-8).  Shortly after, because Plaintiff expressed interest in full-time employment and was doing a good job, Defendant offered Plaintiff the opportunity to take the Bennett Mechanical Test (Exhibit 5, at 8).  Plaintiff failed the test with a score of 35% (Tr. 73 and Exh. F; Exhibit 5 at 9).  Despite his disqualifying test score and despite the fact that Defendant had never hired anyone with such a dismally low score, Defendant still gave Plaintiff a chance to gain employment by proving he could learn and responsibly operate the threader machine (Exhibit 1, at 13; Exhibit 5, at 9-10).  Plaintiff successfully completed this trial period and, on March 16, 2015, Defendant offered him full time employment as a threader operator (Exhibit 1, at 16, 18; Tr. 51-52 and Exh. C; Exhibit 5, at 10).

---

[3] Similarly, Plaintiff's personnel file with Defendant contained an excused absence on January 26, 2016 with the stated reason "Jail".  Plaintiff could not recall if he actually was in jail on that date or not (Tr. 110-113 and Exh. K).

As part of Defendant's hiring process, Plaintiff submitted his resume, employment application, and Form W-4 Withholding Allowance Certificates (Tr. 45-46, 51-54, 78-79 and Exhs. B, C, H).   These forms, completed by Plaintiff contained blatantly *false* information.

Plaintiff's resume, for example, contained a number of false statements (Tr. 45-47 and Exh. B). Plaintiff did not obtain his GED, nor did he ever work at Almetals, Inc. as either an employee or temporary worker (Tr. 36 and Exh. B; Exhibit 6, Almetals Response to Subpoena).  When asked if he had *any* documents that showed he ever worked at Almetals, Inc., Plaintiff answered "no" (Tr. 49-50).

Plaintiff's employment application contained the same false representations as his resume, and more (Tr. 51-52 and Exh. C). In fact, the application contained an "Authorization" that provided:

> "I certify that the facts contained in this application are true and complete to the best of my knowledge and understand that, if employed, falsified statements on this application shall be grounds for dismissal."

In addition to *falsely* re-stating that he had obtained his GED and worked at Almetals, Inc., Plaintiff claimed to have worked at "Ebersher" from "1-15-12 to 2-15-12" and left only because he "found a better opportunity" (Tr. Exh. C). Plaintiff's claim was false.  Eberspacher offered Plaintiff full-time employment on January 15, *2014*, but fired Plaintiff days later – after he failed the mandatory drug

screen by testing positive for marijuana.   Plaintiff eventually *admitted* the information on the application was indeed false (Tr. 58, 61-67 and Exhs. D, E).

And Plaintiff falsely filled out his federal and state income tax forms (Tr. Exh. H). In fact, Plaintiff has not filed tax returns for 2013 through 2018 (Tr. 13-15).   The federal and state forms have declaration paragraphs where Plaintiff "*under the penalty of perjury*" declared "*9*" exemptions under both forms (Tr. 77-84 and Exh. H). In any event, Plaintiff, who was apparently single at the time, could not list *any* of the nine exemptions to which he claimed entitlement (Tr. 81-83).[4]

### 1.  Plaintiff's admitted violation of Defendant's shop rules.

Defendant has an "Agreement" with its hourly workers that, among other things, contains the Shop Rules (Tr. 89-90 and Exh. I).  Under the Agreement, an "Employee Committee" of fellow employees represent the shop workers with regard to Defendant's stated rules and policies (Tr. Exh. I). Plaintiff understood the Committee existed to, among other things, handle employee complaints or

---

[4] Plaintiff at the time had one child with his "baby mother" Tomaniqua Horne (Tr. 28, 30-31, 192).  He is in arrears on child support and believes there's currently a warrant out for his arrest in the matter (Tr. 31-32).  Plaintiff could not remember when he was legally married other than he believes it was sometime before 2018 when he was proven to be the father of a child with Tysha Logan following a paternity suit against him (Tr. 33-34, 35).

grievances (Tr. 85, 87-88).  Plaintiff, however, admittedly *never* brought a single complaint to Defendant's Committee. (Tr. 88).

The Agreement also sets forth the "Shop Rules" for employees to follow (Tr. Exh. I, Section XX).  Although Plaintiff doesn't recall reviewing this section of the Agreement, he did recall seeing a "booklet" that contained the shop rules and *admitted* he knew that a violation of *any* rule could result in discharge (Tr. 85-86, 89-90).   Defendant clearly defined the importance and potential penalty for violating a shop rule:

> Violations of the following rules which prohibit the indicated behavior, unless otherwise individually noted, will, at the discretion of Michigan Rod Products' management, result in disciplinary action up to and including discharge:
>
> * * *
>
> Paragraph 18.  Falsification of personnel or other records and reports.
>
> * * *
>
> Paragraph 37.  Any conduct which is detrimental to the Company's best interest is not permitted.

Plaintiff *admitted* he violated Rule 18 when he intentionally *falsified* his resume, job application, and tax information (Tr. 92-93).

### 2. Reported workplace drug sales by Plaintiff and Defendant's ensuing investigation under the Agreement, Section XX, Paragraph 37.

Plaintiff worked as a "threader" until approximately the end of 2015 or early 2016 when he moved to Defendant's "pointing and rolling" department (Exhibit 1,

at 18; Tr. 119-20).[5]   The pointing and rolling department is where Defendant

manufactures ammunition for the U.S. Military (Exhibit 1, at 18-19; Tr. 120).

Needless to say, the department deals with highly sensitive, highly calibrated

products and Defendant requires strict adherence to all shop operational security

controls (Exhibit 1, at 18-19).  Lumm thought Plaintiff did a good job as a threader

and as a roller, and had the capability to learn the pointer process so he offered

Plaintiff the opportunity (Exhibit 1, at 18-19).

In May of 2016, Lumm learned that Jeremy Blum, a pointing department

employee, was missing time at work (Exhibit 1, at 20-21; Exhibit 5, at 17-18).

Blum's absences deviated from his usual attendance pattern, which caused concern

(Exhibit 1, at 22; Exhibit 5, at 18).  Lumm and Brown knew Blum had a medical

condition that required prescription medication, and had concerns his problematic

attendance might relate to him stopping his medication.  (Exhibit 1, at 21; Exhibit

5, at 18-19).  Brown spoke to Blum about it and Blum assured him that he was

taking his medication and vowed he would improve his attendance (Exhibit 5, at

19).  When he failed to do so, Defendant discharged him.  (Exhibit 1, at 23).

On the day Defendant fired Blum, Brown took a call from Blum's mother

advising that her son was having problems with alcohol and drugs (Exhibit 5, at

---

[5] Defendant did not have any issues with Plaintiff's performance as a threader and, in that job, Plaintiff received all wage increases to which he was entitled under Defendant's procedures (Exhibit 1, at 16; Exhibit 5, at 15-16).

21).  She advised Brown that Blum had been in an accident and needed help for his addiction.  She also told Brown that Plaintiff was providing the drugs to her son. Brown told her that if Blum needed help, he needed to come forward and request it, and he needed to report at his shift starting time later that day.  *Id*.  (Exhibit 5, at 22).  When Blum did not report or otherwise follow up, Defendant summarily discharged him for exceeding his allowed absences.  *Id*. (Exhibit 5, at 23-24).

Later that same day, Lumm and Brown met with Plaintiff (Exhibit 1, at 24; Exhibit 5, at 24).  Lumm advised that Defendant received a report of Plaintiff selling drugs in the plant and asked if the report was true (Exhibit 1, 24-25, 42-43). Plaintiff denied it (Exhibit 1, at 43).  Lumm reminded Plaintiff that he could be terminated for selling drugs and Plaintiff said he understood (Exhibit 1, 25, 43; Tr. 172).  Lumm did not take further action at that time.  Instead, he gave Plaintiff the benefit of the doubt, and Plaintiff returned to his job.  (Exhibit 1, at 67).

On Friday, October 7, 2016, Plaintiff went to Lumm's office complaining about "crap" in the pointing department and requested to go back to the threader department (Exhibit 1, at 44; Exhibit 5, at 28).   Plaintiff claimed to be having a problem with co-worker Trevor Beach (Exhibit 1, at 45-46; Exhibit 7, Declaration of Trevor Beach).   Plaintiff attributed the issue to former temporary worker "Darci" (Exhibit 1, at 45).  According to Plaintiff, he thought Beach and Darci were "talking" and Beach supposedly saw Plaintiff give Darci money (Exhibit 1, at

45-46).  Lumm told Plaintiff he would look into the situation and asked Plaintiff where he preferred to work (Exhibit 1, at 46).  Plaintiff responded that he wanted to stay in the pointing department. *Id*.

Lumm then talked to Beach, who had a different story.  Beach had been employed with Defendant for three years without incident, and currently worked in the pointer department with Plaintiff (Exhibit 1, at 66; Exhibit 7).  Beach told Lumm he didn't trust Plaintiff because, among other reasons, he had heard Blum talk about Plaintiff selling him drugs (Exhibit 1, at 50, 53; Exhibit 7).  Beach also told Lumm that back in May, after Lumm questioned Plaintiff about selling drugs at work, Plaintiff was visibly angry and exclaimed "that m_____ f_____ is going to bust me out, I'm going to treat him like he was in the hood!"  (Exhibit 1, at 51; Exhibit 7).  Beach suggested Lumm talk to another co-worker, Joel Abner, who had witnessed similar conduct (Exhibit 1, at 52).

On Monday, October 10, 2016, Lumm continued his investigation by speaking with Abner, a day-shift machine "set-up operator" in the pointer and roller department (Exhibit 1, at 57; Exhibit 8, Declaration of Joel Abner). Defendant has employed Abner – for 27 years, and Lumm considered him a responsible and trusted employee (Exhibit 1, at 25-26; Exhibit 8).  Abner explained Blum and Plaintiff had been pretty close but suddenly had a falling out (Exhibit 1, at 57).  Abner explained an argument between Plaintiff and Blum had turned so

heated that Abner had to jump between them and break up a fight (Exhibit 1, at 57 and Exhibit 8).  Lumm asked if Abner was aware of any illegal activity involving Plaintiff and Abner responded he heard from Blum that Plaintiff supplied him with drugs at work (Exhibit 1, at 57-58; Exhibit 8).  After concluding his investigation, Lumm decided to discharge Plaintiff because he believed, based on these additional witnesses, who he knew well and trusted (unlike Blum's mother who Lumm had never met), that Plaintiff was selling drugs at work.  Lumm so informed Plaintiff at the outset of Plaintiff's afternoon shift that day.  (Exhibit 1, at 61, 69).

Subsequent to Plaintiff's termination, additional information regarding Plaintiff's involvement with drugs at work came to light.  For example, Lumm spoke to Blum while investigating an EEOC charge Plaintiff had filed; Blum admitted to Lumm that he had purchased drugs from Plaintiff (Exhibit 1, at 63). Lumm also learned recently that Plaintiff had sent John Lloyd – a "set-up operator" in the cold header department – a picture of Plaintiff's "marijuana garden" and asked if he wanted some (Exhibit 9, Declaration of John Lloyd).  Similarly, Plaintiff told Ken Wedyke – a "set-up operator" in the hot header department – about his "marijuana garden" and asked Wedyke if he wanted to buy some (Exhibit 10, Declaration of Kenneth Wedyke).

11

C.     **Plaintiff Files EEOC Charge Alleging A Single "Discriminatory" Event – His Discharge – Then Blames The EEOC For Not Including Alleged Racial Harassment.**

Within a month of his termination, Plaintiff filed a *single* count Charge of disparate treatment race discrimination with the EEOC (Tr. 143-44 and Exh. L).[6] Plaintiff *admitted:* (1) he had an attorney represent him throughout the EEOC process; (2) he provided the EEOC with the information contained in the Charge and Intake Questionnaire; (3) he reviewed the Charge before signing it; and (4) he also signed the Intake Questionnaire (Tr. 144-46, 163, 168 and Exhs. L, M). Remarkably, Plaintiff testified he had absolutely no recollection of reviewing the Intake Questionnaire before signing it, and claimed the first time he saw the Questionnaire was at his deposition (Tr. 161-62). No allegation or claim of alleged racial harassment is referenced in either the Charge or Intake Questionnaire (Tr. 148, 168 and Exhs. L, M).  Absurdly, *Plaintiff now claims he told the EEOC all about the alleged racial harassment and blames any omissions on the EEOC* (Tr. 165-68).[7]

---

[6] Lumm testified that, at time of Plaintiff's termination, he had never before received a report of an employee selling drugs at work (Exhibit 1, at 65).

[7] Plaintiff's *sole* evidence in support of his EEOC Charge was that Caucasian co-worker Jason Wilkens sold drugs at work but wasn't fired (Tr., Exh. M). Plaintiff's counsel had requested and cancelled the deposition of Wilkens. In the course of preparing for the deposition, Defendant learned from another long-term employee that she once saw Wilkens give prescription drugs to Plaintiff at Plaintiff's request. Promptly upon learning of Wilkens' conduct, on September 27, 2019, Lumm discharged Wilkens.

### 1.   Plaintiff's unsupported claims of racial harassment.

Only now has Plaintiff attempted to advance claims of alleged racial harassment.  While there are brief references to "racial slurs" in two Complaint paragraphs, Plaintiff provided testimony at deposition that is so extreme, fantastical, and out of touch with reality, that Plaintiff's testimony should be rejected out of hand.  He claims to have been relentlessly subjected to vile comments involving the "n" word and that he repeatedly complained to virtually everyone, but it never stopped (Tr. 121-22, 125, 127).  He even tells a tale out of whole cloth that another employee who sold drugs in the plant got shot at work for selling the drugs!  (Tr. 152-53).  Plaintiff's self-serving and unsupported claims are directly contradicted by contrary evidence (Exhibit 1, at 28, 62; Exhibit 5, at 28-30; Exhibits 7-10).  And only in one instance did Plaintiff claim to have ever had any evidence of supposed harassment – a photo on his cell phone of an alleged "dime bag" – but that alleged evidence no longer exists because Plaintiff claims he deleted it!  (Tr. 132-33).  Plaintiff's unsupported and unbelievable claims of racial harassment should therefore be given *zero* consideration.

### III.   STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Tpk. Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

It is not sufficient for the non-moving party to "simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, "[t]he plaintiff must present more than a scintilla of evidence in support of [his] position; the evidence must be such that a jury could reasonably find for plaintiff." *Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994). Plaintiff's proofs do not raise even a "metaphysical doubt" as to any claim, warranting summary judgment here.

## IV.   LEGAL ARGUMENT

### A.   Plaintiff's Discrimination Claims Fail.

#### 1.   Standard of Proof In Disparate Treatment Cases.

In this case, Plaintiff alleges race discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and Michigan's Elliott-Larsen

14

Civil Rights Act, M.C.L. 37.2101 *et seq.*  The standard of proof is generally the same under both Elliott-Larsen and federal law.  *Fuhr v. Hazel Park School District*, 710 F.3d 668, 673 (6th Cir. 2013) (federal law); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *Lytle v. Malady* (On Rehearing), 458 Mich. 153, 181 and n.30 (1998) (Elliott-Larsen).

A plaintiff alleging race discrimination may prove his claim using either direct or circumstantial evidence.  *White*, 533 F.3d at 391 and n.5; *Sniecinski v. Blue Cross & Blue Shield of Michigan*, 469 Mich. 124, 132 (2003).  Where a plaintiff relies on circumstantial evidence, courts utilize a three-part burden-shifting framework in analyzing a motion for summary judgment.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).  The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *White*, 533 F.3d at 391.  To do so, Plaintiff must introduce evidence that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 and n.4 (6th Cir. 1992); *Sniecinski*, 469 Mich. at 133-35 and n. 8; *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 695 (1997).

"Once the plaintiff establishes this *prima facie* case, the defendant's burden is to articulate a legitimate, non-discriminatory reason for the adverse employment

action." *White*, 533 F.3d at 391; *Town*, 455 Mich. at 695-96.  If the defendant

meets this burden, the plaintiff's burden is to show – through admissible evidence

– that the defendant's proffered reason was not its true reason, but merely a pretext

for discrimination." *White*, 533 F.3d at 391-92; *Hazel v. Ford Motor Co.*, 464

Mich. 456, 465-66 (2001); *Lytle v. Malady*, 458 Mich. at 182.  At all times, the

burden of persuasion remains with the plaintiff.  *St. Mary's Honor Center v. Hicks*,

509 U.S. 502, 511 (1993).

### 2. Plaintiff Cannot Establish a *Prima Facie* Case Because There Were No Circumstances From Which Race Discrimination Could Be Legitimately Inferred.

Plaintiff admittedly satisfies elements (1) and (2) of his *prima facie* case:  he

(1) self-identifies as African-American; and (2) was discharged.  In addition, while

he did not present to Defendant as meeting the basic qualifications for employment

– element (3) – due to solidly failing the machining skills test, he convinced

Defendant to let him try out on the less complex equipment.  There, he performed

satisfactorily, so he was at least arguably qualified to operate one or more

machines.

Plaintiff does not, however, offer *any* admissible evidence on element (4)

because there are no circumstances from which it can reasonably be inferred that

his race had anything to do with the discharge decision.  This element is satisfied

by demonstrating that similarly situated employees outside Plaintiff's protected

16

class were treated more favorably.  See *Mitchell v. Toledo Hosp.*, 964 F.2d at 582-83; *Town*, 455 Mich. at 699-700.  To do so, Plaintiff must show that "all of the relevant aspects of [his] employment situation were nearly identical" to those with whom he compares himself.  *Smith v. Goodwill Indus. of West Michigan, Inc.*, 243 Mich. App. 438, 449 (2000).  See also *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (same); *Lytle*, 458 Mich. at 178 and n.28.

Here, Plaintiff alleges Defendant discharged him because he is African-American.  But he offers no admissible evidence of a non-African-American machinist about whom Defendant had received reports from multiple sources that the employee was selling drugs.  Plaintiff testified that he told the EEOC of only one such individual – Jason Wilkens.  Tr. 168-69 and Exh. M.  Plaintiff also claims he told Defendant's managers about Wilkens, but he provides no evidence of having done so nor does any record of such a report exist anywhere in Defendant's records.  See *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997) (Plaintiff's Complaint and uncorroborated deposition testimony insufficient to raise a fact question on his claims of race and national origin discrimination). *Accord, Larsen v. City of Beloit*, 130 F.3d 1278, 1285 (7th Cir. 1997).  Defendant's managers uniformly and stanchly disagree that Plaintiff made any such reports, and the managers (Lumm and Brown) contemporaneously wrote notes of any meetings or conversations they had that even mentioned drugs, given Defendant's strict

prohibition on drug sales in the workplace.  All of those notes identified no one other than Plaintiff as having sold drugs in the workplace.  Exhibit 1, at 37-39, 42-55, 57-58, Exhs. 6, 8-11.

And it must be remembered that no action was taken against Plaintiff based on a single unknown source (Blum's mother).  Rather, Lumm and Brown told Plaintiff of this initial report, Plaintiff denied it was true, the managers – having never met Blum's mother – gave Plaintiff the benefit of the doubt and Plaintiff continued with his employment without further action. Exhibit 1, at 37-39, Exh. 6. And when another employee – one with a long and trusted history with Defendant – told Defendant's management recently during the course of this lawsuit that the employee had once witnessed Wilkens give Plaintiff a prescription pill in exchange for a soda, Lumm promptly discharged Wilkens.[8]  Accordingly, Plaintiff's *prima facie* case fails at element (4) and his discrimination claims warrant dismissal.

### 3. Plaintiff Cannot Show That The Legitimate Non-Discriminatory Reason For the Challenged Employment Action Is Pretextual.

Even if Plaintiff could establish a *prima facie* case, he cannot meet his pretext burden.  A plaintiff can show pretext in three ways:  (1) that the proffered

---

[8] Plaintiff also claims he told Defendant's managers of three or four additional workers allegedly selling drugs, only one of whom he supposedly identified by last name. This similarly is not evidence supporting Plaintiff's uncorroborated testimony. Defendant has no record of any such report by Plaintiff and steadfastly denies receipt of any report, nor is there any support in any of Defendant's policies and practices to suggest anything to the contrary.  *Weeks*, 126 F.3d at 939.

reason had no basis in fact; (2) that the proffered reason did not actually motivate the employer's action; or (3) that the reason was insufficient to motivate the employer's action. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009); *Dubey v. Stroh Brewery Co.*, 185 Mich. App. 561, 565-66 (1990). The Sixth Circuit in *Chen* cautioned that "formalism" in the application of this test should be avoided and that "at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Id.*

Plaintiff cannot show that the reason for his discharge – his reported sale of illegal drugs in the workplace by three sources – is false and that the real reason for the discharge was because he is African-American. The fact that Plaintiff personally believed – or his counsel personally advocates – that Defendant needed more proof of Plaintiff's illicit drug sales does not taint Defendant's decision with a discriminatory motive, because neither personal opinion nor argument of counsel can raise a question on pretext. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 533 (6th Cir. 2012); *Hazle v. Ford*, 464 Mich. at 465-67, 474.

Defendant is in the business of manufacturing ammunition for the U.S. Military. As such, it must create and maintain strict drug-free workplace principles that include prohibiting drug sales in the workplace. Plaintiff does not deny Defendant had a drug-free workplace requirement. In fact, *Plaintiff's* counsel characterized such a policy as "just good business." Exhibit 5, at 26-27. Plaintiff's

19

only offered criticisms of Defendant's investigation were that (1) Defendant relied on hearsay; and (2) Defendant failed to review its workplace cameras, which, he claims, would have proved he was not selling drugs.   The main problems with Plaintiff's criticisms are that (1) all investigations rely on hearsay (other than on the rare occasion where the investigator actually witnessed the misconduct); and (2) Defendant had no cameras inside the facility.   Neither criticism is evidence of pretext or falsity, and certainly not evidence that the real reason for Plaintiff's discharge was race.

Plaintiff cannot show that Defendant's discharge decision had no basis in fact (the first method of proving pretext) merely by denying selling drugs in the workplace.   Discrimination cases are not an opportunity for disgruntled ex-employees to have the judiciary sit as a "super-personnel department" second-guessing an employer's assessment of evidence.  *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 462 (6th Cir. 2004).   An employer's decision regarding discipline following an investigation is entitled to deference so long as it was a "reasonably informed and considered decision before taking an adverse employment action."  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285-86 (6th Cir. 2012).   The burden is on Plaintiff to demonstrate that Defendant's proffered reason was not "honestly held," which requires some evidence of an error on the part of the employer that is too obvious to be unintentional.  *Majewski v. Automatic*

*Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). *Accord, Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590-91 (6th Cir. 2014). Employers do not have to show they were right or that their investigations "left no stone unturned." *Seeger*, 681 F.3d at 285. An employer may even rely on statements that it did not have until sometime after it made its discharge decision. *Loyd*, 766 F.3d at 591. Even if employers conduct an imperfect investigation or are later shown to be "mistaken, foolish, trivial, or baseless," they are still entitled to summary judgment provided their conclusions were reasonable. *Chen v. Dow Chem.*, 580 F.3d at 401.

Plaintiffs' denial that he sold drugs does not preclude summary judgment. In addition to the initial report to Defendant by Jeremy Blum's mother that Plaintiff was selling drugs to her son, Defendant had since heard from two long-term trusted employees that Plaintiff was selling drugs in the workplace. Since that time, Blum confirmed Plaintiff had indeed sold him illegal drugs. Moreover, through this lawsuit, Defendant learned that Plaintiff had offered to sell marijuana to coworkers Ken Wedyke and John Lloyd by sending pictures to them of his product, and had traded Wilkens a soda for a prescription pain pill. Defendant also learned through the lawsuit that Plaintiff had lied on his application about the fact that a recent prior employer had fired him for testing positive for marijuana, among the many other admitted falsehoods contained in Plaintiff's application.

21

Nor can Plaintiff show that his drug sales were insufficient to support or did not actually motivate the discharge. This is usually shown by demonstrating that others who also sold drugs were not discharged. It was uncontroverted (other than by Plaintiff's uncorroborated and unsubstantiated denials) that reports of Plaintiff selling drugs at work were the first drug sales reported to Defendant, meaning none of this type of pretext evidence exists in this case. And it is uncontroverted that when Defendant did subsequently receive from a known source another report of a drug sale or "trade," i.e., Wilkens, it promptly fired him.

### B.    Plaintiff Cannot Succeed On A Race Stereotyping Theory.

Plaintiff also alleges Defendant engaged in race discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), "by willingly stereotyping Plaintiff, a young African-American male, as a drug dealer, and by terminating Plaintiff because of his race as a result." Complaint, ECF No. 1, ¶ 35. Allegations of stereotyping based on protected category are more typically characterized today as "mixed motive claims."  Such claims originated with gender stereotyping claims, ultimately finding recognition in the plurality opinion in *PriceWaterhouse v. Hopkins*, 490 U.S. 228 (1989), as further refined by the U.S. Supreme Court in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  The mixed motive theory applies when there is evidence that "both legitimate and illegitimate reasons motivated the decision" at issue.  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 711-12 (6th Cir.

2006), quoting *Desert Palace*, 539 U.S. at 93.  Applied to this case, Plaintiff's argument is that even if his drug sales provided a legitimate motive for discharging him, there is evidence that Plaintiff's race was also a motivating factor.

Plaintiff's position is ludicrous on its face.  If anything, Defendant afforded Plaintiff more favorable treatment than any other applicant who scored only 35% on his machining skills test by hiring him despite his dismal test score because Defendant's managers believed Plaintiff when he said he was committed to learn the job.  They thereafter gave him regular increases and additional opportunities as he worked to learn other jobs.  So, when and why did they suddenly decide that they had to start "stereotyping" him because of his race?  There is *no* hint or even the slightest inference of any motivation by Defendant's managers other than the report from three sources of Plaintiff's drug sales in the workplace.

In *Wright*, the defendant discharged the African-American plaintiff based in part on his alleged sexual harassment of female subordinates.  He claimed he sustained his mixed-motive burden of showing his race and gender were also motivating factors.  He did so, he argued, by (1) showing he was treated differently in the investigatory process; and (2) by showing the defendant undertook an "insufficient" investigation.  *Wright*, 455 F.3d 713.

The problem with the *Wright* plaintiff's mixed-motive proffer was that, as here, the Court had determined that (1) any proffered comparators who allegedly

23

engage in misconduct were not "similarly situated" to the plaintiff; and (2) the defendant had performed enough of an investigation to have reached "a reasonably informed and considered decision" that was "honestly held." *Wright*, 455 F.3d at 708-09.  See also *Wells-Griffin v. St. Xavier Univ.*, 26 F.Supp.3d 785, 793 (N.D. Ill. 2014) (where plaintiff failed to present evidence of similarly situated non-minority employees who were treated more favorably than she was, her race stereotyping claim failed).

Thus, on a record similar to that present in *Wright*, Plaintiff has failed to "demonstrate that his race . . . was a motivating factor" in the discharge decision for the same reasons present in *Wright* – whether analyzed under an individual disparate treatment theory or a mixed-motive theory.

## V.   CONCLUSION

As set forth above, there is no genuine issue of material fact, and pursuant to Federal Rule of Civil Procedure 56, summary judgment should be entered in Defendant's favor on all of Plaintiff's claims.

24

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By:*/s/Joseph C. Pagano*
    Julia Turner Baumhart (P49173)
    Joseph C. Pagano (P57107)
    Ryan D. Bohannon (P73394)
Attorneys for Defendant
280 N. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
(248) 645-0000
jbaumhart@khvpf.com
jpagano@khvpf.com
Dated: October 31, 2019    rbohannon@khvpf.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties on record, and I hereby certify that I have caused to be served via U.S. mail the foregoing document to the following non-ECF participants:

(no manual recipients)

*/s/Joseph C. Pagano*
Kienbaum Hardy Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
jpagano@khvpf.com
(P57107)

347882

1