## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Preston L. Skinner II,

                    Plaintiff,

v.

Michigan Rod Products, Inc.,

                    Defendant.

_____/

Case No. 18-12708

Judith E. Levy
United States District Judge

Mag. Judge Mona K. Majzoub

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20]

Before the Court is Defendant Michigan Rod Products' motion for summary judgment. (ECF No. 20.) Defendant, a manufacturing company, employed Plaintiff Preston L. Skinner II for several years in its threading, pointing, and rolling departments. Plaintiff, who is African American, alleges that he was repeatedly subject to racially discriminatory comments during his employment with Defendant. Defendant purportedly terminated Plaintiff for selling drugs to a former coworker. Plaintiff brings this suit against Defendant for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. 37.2101 *et seq.* ("ELCRA").

In Defendant's motion for summary judgment, it argues that (1) Plaintiff cannot establish a *prima facie* case because there were no circumstances from which race discrimination could be legitimately inferred; and (2) Plaintiff cannot show that Defendant's allegedly legitimate, non-discriminatory reason for the challenged employment action is pretextual under either a direct discrimination or mixed-motive theory. (ECF No. 20.)

For the reasons set forth below, the Court denies Defendant's motion for summary judgment.

## I.   Background

## A.   Factual Summary

Plaintiff was employed by Defendant in its threading department first on a trial basis starting in August of 2014, and he was hired as a full-time employee on March 16, 2015.  (ECF No. 20-3, PageID.153; ECF No. 23-5, PageID.336.) After being hired on a full-time basis, Plaintiff applied for, and was awarded, a position in the pointing and rolling department. (ECF No 23-3, PageID.327; ECF No. 23-5, PageID.337.)

Plaintiff was one of two African American employees in a workplace of approximately 100 employees at that time. (ECF No. 20-3, PageID.168; ECF No. 23-5, PageID.334.)

Plaintiff testified that after he was hired on a full-time basis, he was subjected to racially-discriminatory statements, racial slurs, and harassment by his coworkers on multiple occasions, including from coworkers Trevor Beach and Jeremy Blum. (ECF No. 20-3, PageID.165-172.) Plaintiff further testified that he made multiple oral complaints regarding his coworkers' conduct to several of his supervisors: Ed Lumm, President; Tim Brown, Vice President of Manufacturing; Jason Davis, a direct supervisor; and Loy Russom, another direct supervisor. (ECF No. 20-3, PageID.154, 165-167; ECF No. 23-3, PageID.327-328.) Although Plaintiff was unaware of whether these coworkers were disciplined, the racial harassment allegedly did not stop during Plaintiff's employment. (ECF No. 20-3, PageID.168-169, 186.) Plaintiff did not make any written complaints regarding these incidents. (*Id.* at PageID.167.)

Defendant disputes Plaintiff's assertion that he reported racially discriminatory conduct. Lumm and Brown testified that they had never received a complaint from Plaintiff about racial harassment, and their

investigative notes do not reference any complaints of racial harassment by Plaintiff. (ECF No. 20-2, PageID.120-122, 130-132; ECF No. 20-6, PageID.250-251.)

In May of 2016, Brown received a call from the unnamed mother of one of Defendant's employees, Blum. (ECF No. 20-6, PageID.248; ECF No. 20-2, PageID.117.) Blum, who had been repeatedly missing work without justification, was absent from work that day, and Blum's mother indicated that it was because Blum had been in an accident. (ECF No. 20-2, PageID.117.) When Brown informed Blum's mother that Blum needed to come to work or his job was in jeopardy, Blum's mother expressed that Blum had started using drugs that were sold to him by Plaintiff. (*Id.*)

That same day, Lumm, Brown, and Plaintiff had a meeting. (ECF No. 20-2, PageID.118.) Lumm informed Plaintiff that Defendant had received a report that Plaintiff was selling drugs in the plant. (*Id.* at PageID.122; ECF No. 20-6, PageID.249-250.) When asked by Lumm and Brown whether Plaintiff sold drugs at the workplace, Plaintiff denied doing so. (*Id.*) Plaintiff claims that he informed Lumm and Brown that he was being harassed because of his race, and additionally informed

4

them of the identity of coworkers at the plant who were selling drugs. (ECF No. 20-3, PageID.180-181.) The parties do not dispute that Lumm informed Plaintiff at this meeting that if he was selling drugs at work, he would be terminated. (ECF No. 20-3, PageID.181; ECF No. 20-2, PageID.118.)

On October 7, 2016, Plaintiff voluntarily went to Lumm's office and requested to go back to the threading department. (ECF No. 20-2, PageID.122, 132.) Lumm testified that Plaintiff wanted to transfer because of difficulties with Beach. (*Id.*) According to Lumm, Plaintiff felt that Beach was angry at Plaintiff because of Plaintiff's interactions with another coworker. (*Id.* at PageID.122-123.)

Plaintiff testified that he wanted to transfer because he was being harassed, and that he felt he was being accused of selling drugs so that Plaintiff would lose his job. (ECF No. 20-3, PageID.169.) According to Plaintiff, Lumm and Brown denied Plaintiff's request to transfer, telling Plaintiff that he was "fine" and had "nothing to worry about." (*Id.*) Plaintiff was not transferred. (*Id.*)

That same day, Lumm met with Beach. (ECF No. 20-2, PageID.124.) At this meeting, Beach accused Plaintiff of selling drugs to

5

Blum. (*Id.*) Beach claimed to be aware of this because he heard Blum talking about it, but Beach denied having ever directly seen Plaintiff selling drugs. (*Id.* at PageID.124-125.) Beach encouraged Lumm to talk to his coworker, Joel Abner. (*Id.* at PageID.133.)

On October 10, 2016, Lumm met with Abner. (ECF No. 20-2, PageID.126.) Abner repeated the same allegations as Beach: Abner claimed that Blum told Abner that Plaintiff sold drugs to Blum, but Abner had never directly observed Plaintiff selling drugs. (*Id.*)

That same day,[1] Plaintiff, Lumm, and Brown had another meeting, at which point Lumm and Brown terminated Plaintiff's employment. (ECF No. 20-3, PageID.181.) Lumm testified that he made the decision to terminate Plaintiff, and that he made this decision based on the information provided from Blum's mother, Beach, and Abner. (ECF No. 20-2, PageID.127-128.) Brown talked about the decision with Lumm and did not express any reservations regarding Lumm's decision during their conversation. (ECF No. 20-6, PageID.251-252.)

---

[1] The parties offer conflicting evidence on this date. Although Plaintiff's EEOC charge form indicates the date of termination as October 9, 2016, Lumm testified that Plaintiff was not terminated until after Lumm's meeting with Abner on October 10, 2016. (ECF No. 20-2, PageID.129; ECF No. 20-3, PageID.215.)

**B. Procedural History**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on June 11, 2018. (ECF No. 1, PageID.2; ECF No. 20-3, PageID.173, 176-178, 215-219.) On August 30, 2018, Plaintiff filed a complaint in this Court alleging that he was subject to race discrimination as a result of his termination, in violation of Title VII and the ELCRA. (ECF No. 1, PageID.6–10.) On October 31, 2019, Defendant filed a motion for summary judgment (ECF No. 20), to which Plaintiff responded on December 20, 2019. (ECF No. 23.)[2]

**I.   Legal Standard**

**A.  Summary Judgment**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[2] Pursuant to E. D. Mich. L.R. 7.1(f)(2), there will be no oral argument on this matter.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mr. Hawley Ins. Co.*, F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## B. Title VII and the ELCRA

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

The ELCRA forbids similar conduct. M.C.L. § 37.2202 (2018). Claims of race discrimination under the ELCRA are reviewed under the same standards as claims of race discrimination brought under Title VII. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012) (quotations omitted). Further, Michigan courts frequently "turn to federal precedent for guidance in reaching [their] decision" to determine whether a claim has been established in a case brought under the

8

ELCRA. *Radtke v. Everett*, 442 Mich. 368, 382 (1993) (quoting *Sumner v. Goodyear Co.*, 427 Mich. 505, 525 (1986)).

A plaintiff may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by providing circumstantial evidence which creates an inference of discrimination. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th Cir. 2008). Where, as here, a plaintiff relies on circumstantial evidence (ECF No. 1, PageID.7), courts use a three-part burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because Michigan's ELCRA "mirrors Title VII of the federal Civil Rights Act of 1964," *Lind v. City of Battle Creek*, 681 N.W.2d 334, 337 (Mich. 2004), "[i]n order to avoid summary disposition, the plaintiff must . . . proceed through the familiar steps set forth in *McDonnell Douglas*." *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001) (citing *McDonnell Douglas*, 411 U.S. 802–03).

The first part of the *McDonnell Douglas* framework places the burden on the plaintiff to make out their *prima facie* case. As the Sixth Circuit has held, "[t]o establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) [they are] a

9

member of a protected class; (2) [they were] qualified for [their] job; (3) [they] suffered an adverse employment decision; and (4) [they were] replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White*, 533 F.3d at 391; *see also Lytle v. Malady*, 579 N.W.2d 906, 914 n.19 (Mich. 1998) (describing the fourth part of the *prima facie* case as requiring the plaintiff to show that they were "discharged under circumstances that give rise to an inference of unlawful discrimination," but explaining that "[t]his four part test is an adaptation of the United States Supreme Court's *McDonnell Douglas* test to prove a *prima facie* case of discrimination").

Under the second part of the *McDonnell Douglas* framework, "[o]nce the plaintiff establishes this *prima facie* case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *White*, 533 F.3d at 391 (citing *McDonnell Douglas*, 411 U.S. at 802).

The third part of the framework provides that "if the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a

pretext for discrimination." *Id.* (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). The plaintiff must show that a jury could reasonably disbelieve the defendant's proffered reason for the adverse employment action. *See White*, 533 F.3d at 394. The ultimate burden of persuasion remains at all times with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006).

## II.   Analysis

### A. Plaintiff's *Prima Facie* Case Regarding Race Discrimination

Defendant argues that there is no issue of material fact as to Plaintiff's failure to establish a *prima face* case of discrimination on the basis of race. (ECF No. 20, PageID.26–27.)

Defendant does not dispute that Plaintiff has established his *prima facie* case with respect to the first, second and third elements of his claims. (ECF No. 20, PageID.97.) Rather, Defendant argues that Plaintiff has failed to demonstrate the fourth element: whether Plaintiff was treated differently than similarly situated non-protected employees. (*Id.*)

11

"The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated[.]'" *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 610 (6th Cir. 2019) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). "[R]ather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Id.* (emphasis in original); see also *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) (finding a plaintiff similarly situated to a non-protected employee despite the two individuals being in two different departments and having different supervisors).

The Sixth Circuit has articulated relevant factors to consider in determining whether an individual is similarly situated to the plaintiff, including having "dealt with the same supervisor, . . . been subject to the same standards and [] engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Redlin*, 921 F.3d at 610, quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Whether a non-protected employee is similarly situated is a jury

question. *Jones v. Johnson*, 801 F. App'x 338, 349 (6th Cir. 2020) (citing *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 757 (6th Cir. 2012), abrogated on other grounds *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

Plaintiff has produced evidence creating a genuine issue of material fact regarding whether Jason Wilkins, a machine operator for Defendant, and Plaintiff are similarly situated such that Wilkins is a comparator to Plaintiff. Plaintiff testified to having directly complained to supervisors Lumm, Brown, Davis, and Russom that four individuals—all Caucasian employees—were selling drugs in the workplace and did not face any discipline from Defendant. (ECF No. 20-3, PageID.174–176.) In Plaintiff's EEOC questionnaire, Plaintiff further identified one of these individuals (i.e., Wilkins) as a similarly situated individual subjected to different treatment. (ECF No. 20-3, PageID.176–177.) Lumm reportedly informed Plaintiff that "if it was true" that Plaintiff was selling drugs, the "ramifications" would be termination (ECF No. 20-2, PageID.118); Defendant admits in its response that Defendant had a "strict prohibition on drug sales in the workplace." (ECF No. 20, PageID.98–99.) Lumm, Brown, and Russom were in supervisory capacities over both Plaintiff

13

and Wilkins. See *Redlin*, 921 F.3d at 611 (finding that comparators were treated differently when a supervisor with the authority to discipline both comparators chose to discipline one individual, while the other was subject to no punishment).

Although Wilkins and Plaintiff were allegedly accused of engaging in the exact same conduct (i.e., selling drugs) by an employee of Defendant, and no supervisor witnessed them in the process of selling drugs, only Plaintiff was terminated. The burden of establishing a prima facie case of discrimination under the statute "is not onerous." *Jackson v. Fed. Express Corp.*, 518 F.3d 388, 392 (6th Cir. 2008). Accordingly, a reasonable jury could find that Wilkins serves as a comparator to Plaintiff, sufficient to satisfy the fourth element of Plaintiff's *prima facie* case.

Defendant nevertheless argues that Plaintiff "offers no admissible evidence of a non-African-American machinist about whom Defendant had received reports from multiple sources that the employee was selling drugs[,]" such that Plaintiff's *prima facie* case fails. (ECF No. 20, PageID.97–98.) Defendant acknowledges that Plaintiff testified to having informed Defendant's managers about a similarly situated individual—

Wilkins—and further acknowledges that Defendant similarly informed the EEOC of Wilkins as well. (*Id.* at PageID.98.) However, Defendant argues that Plaintiff's deposition testimony is not "admissible,"[3] citing a Seventh Circuit case for the proposition that uncorroborated deposition testimony is insufficient to raise a fact question regarding claims of race discrimination. *See Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997) ("[A] plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.").

Aside from the fact that *Weeks* is not controlling precedent in this circuit, Defendant attempts to place more weight on *Weeks* than it can bear. Despite *Weeks*' broad language regarding the insufficiency of uncorroborated deposition testimony, a closer reading of the context reveals that the problem had more to do with the plaintiff's speculative allegations in his deposition than the fact that the deposition was the only type of evidence offered. Weeks argued, in the face of a letter from

---

[3] Defendant's argument characterizes the alleged barrier presented by *Weeks*, 126 F.3d 926, as an issue of admissibility. (ECF No. 20, PageID.26–27.) However, Defendant's argument centers on the alleged *insufficiency* of uncorroborated deposition testimony to surviving a motion for summary judgment. (*Id.*) Defendant does not provide any rationale for the claim that Plaintiff's deposition testimony regarding Wilkins is inadmissible for this analysis.

his employer explaining that he would be employed on an at-will basis, that he was promised a definite term of employment. *Weeks*, 126 F.3d at 939 ("Weeks testified that [the defendant] discussed with him Korean 'traditions" and traditions of lifetime employment [and] that the idea that 'Asian culture still embraces lifetime/long term employment' was 'reiterated' by [the defendant]" but "admitted that [the defendant] did not make any guarantees."). Therefore, the language quoted by Defendant ultimately stands for the same proposition articulated by the Sixth Circuit: "A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions." *Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Plaintiff's testimony at issue here directly reports facts that allegedly happened to him—having reported the drug sales of several Caucasian employees to his supervisors—and does not venture guesses about circumstances beyond his direct experiences nor offer an assertion that necessarily is contradicted by non-testimonial evidence.

Additionally, Defendant implies that Plaintiff's *prima facie* claim must fail because of the allegedly broad swath of evidence that appears

16

to contradict Plaintiff's testimony of having reported non-protected employees' drug sales to Defendant's managers. (ECF No. 20, PageID.98–99.) Defendant highlights its managers' collective denial about Plaintiff having made any such reports to them, as well as the absence of any mention of drug sales in these same managers' contemporaneous notes of meetings with Plaintiff. (*Id.*) However, Defendant's argument solely impacts Plaintiff's credibility, and does not impact whether Plaintiff has provided sufficient information to survive a summary judgment motion. The Court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment, as this is the role of the finder of fact. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

There is sufficient evidence from which a reasonable jury could find that Plaintiff and Wilkins were comparators. Accordingly, Plaintiff has created a genuine issue of material fact as to his *prima facie* case.

## B. Pretext Regarding Race Discrimination

Defendant next argues that Plaintiff has failed to demonstrate that Defendant's stated reason for discharging Plaintiff was pretextual. (ECF No. 20, PageID.99–103.)

17

"[A] plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)). "However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) (en banc)). To survive summary judgment, a plaintiff "must produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it" took an adverse employment action against the plaintiff. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

Under the honest-belief rule, "an employer is entitled to 'summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.'" *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 591-92 (6th Cir. 2014) (quoting *Chen*, 580 F.3d at 401). "[A]n

18

employer's proffered reason is considered honestly held where the employer can establish it reasonably relied on particularized facts that were before it at the time the decision was made." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (*quoting Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006)) (original brackets omitted). "In determining whether an employer 'reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)) (further citation omitted). "The employee must then produce 'proof to the contrary' that challenges the foundation of the employer's belief or lose on summary judgment." *Hardesty v. Kroger Co.*, 758 F. App'x 490, 493 (6th Cir. 2019), quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Defendant argues that Plaintiff cannot meet his burden to establish that Defendant's articulated reason for terminating Plaintiff—his

alleged sale of drugs in the workplace—was a pretext for unlawful discrimination. (ECF No. 20, PageID.99–103.) Specifically, Defendant claims that Plaintiff cannot show that the reason for his discharge was false. Defendant argues that the decision to terminate Plaintiff was based on the honest belief that Plaintiff sold drugs in the workplace, supported by the initial report from Blum's mother and the later corroboration by two allegedly "long-term trusted [sic]" employees. (ECF No. 20, PageID.102.) Defendant further highlights evidence obtained during the course of this litigation (e.g., deposition testimony of coworkers alleging that Plaintiff had offered to sell them marijuana) that allegedly support Defendant's rationale for terminating Plaintiff. (*Id.*) Additionally, Defendant claims that there are no comparators to Plaintiff, alleging: (1) Plaintiff was the first individual reported as selling drugs at Defendant's workplace; and (2) during the course of this litigation, Defendant fired Wilkins after it received a report that Wilkins was selling drugs in the workplace. (*Id.* at PageID.103.)

Defendant is correct that Plaintiff's denial that he sold drugs in the workplace cannot alone demonstrate that Defendant's rationale for termination was a pretext. See *Seeger*, 681 F.3d at 285 ("An employee's

bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact."). However, Plaintiff's evidence goes beyond a bare denial of Defendant's allegations.

Defendant's managers allegedly based their determination to terminate Plaintiff on the statements made by Blum's mother, Beach, and Abner, both of whom indicated *Blum told them* that Plaintiff sold Blum drugs. (ECF No. 20-2, PageID.127–128.) However, Plaintiff testified that Blum had previously called Plaintiff racial slurs in the workplace, and further testified that he reported this incident to Brown. (ECF No. 20-3, PageID.171.) At the time of Plaintiff's termination, no individual came forward to Defendant having personally observed Plaintiff selling drugs in the workplace. Accordingly, Defendant's only source of accusations regarding Plaintiff's alleged drug sales effectively came from Blum—an individual who Defendant allegedly knew had made racially-derogatory statements to Plaintiff. There is a genuine question of fact as to whether Defendant's managers' reliance on Blum's allegations as their only source of evidence that Plaintiff was allegedly

selling drugs constituted a "reasonably informed and considered decision[.]" *Wright*, 455 F.3d at 708.

Furthermore, Defendant's knowledge of Plaintiff's relationship with Beach could also cause a jury to find Defendant's purportedly honest belief as unreasonable. Lumm admitted that Plaintiff approached him to request a transfer from the rolling department because Plaintiff was "having problems with [Beach]." (ECF No. 20-2, PageID.122.) Lumm further admitted that he talked with Abner regarding the allegations against Plaintiff because Beach encouraged him to do so. (*Id.* at PageID.124.) Plaintiff testified to several instances in which Beach made racially discriminatory statements to Plaintiff, including one instance in which Beach claimed "all n****** sell drugs[;]" Plaintiff alleged to have reported these incidents to his supervisors to no avail. (ECF No. 20-3, PageID.168–171.) A jury could thus find Defendant's reliance on the allegations made by Beach and Abner as justification for their purportedly honest belief to be unreasonable, and could shed light on whether Defendant's proffered reason was its actual motivation. *See Risch*, 581 F.3d at 391.

22

The record also contains other evidence indicative of pretext. The Sixth Circuit has explained that discriminatory remarks by non-decisionmakers can serve as probative evidence of pretext:

> Although discriminatory statements by a nondecisionmaker, standing alone, generally do not support an inference of discrimination, the comments of a nondecisionmaker are not categorically excludable. Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

*Ercegovich*, 154 F.3d at 356 (internal quotation marks and citations omitted); see also *Risch*, 581 F.3d at 393 (finding statements of various male non-decisionmakers relevant to determine whether a female plaintiff was discriminated against on the basis of her sex, such that summary judgment was inappropriate). Here, Plaintiff testified to numerous incidents in which non-decisionmaking coworkers—including Beach—made discriminatory remarks about African American individuals in the workplace. Many of these remarks disparaged Plaintiff's presence in particular departments, and communicated antagonism toward Plaintiff as an African American person in the

workplace generally, as well as in roles and departments perceived to be of a higher status in the workplace (e.g., "telling [Plaintiff] that he should be a sorter instead of moving up in the company"; telling Plaintiff "n*****, I'm gonna get you off this hi-lo one way or another"; telling Plaintiff "look at the n***** taking all of the jobs"). (ECF No. 20-3, PageID.167–170.) These comments reveal a discriminatory atmosphere regarding race and may serve as circumstantial evidence of individualized discrimination directed toward Plaintiff. See *Ercegovich*, 154 F.3d at 356 ("[W]e do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus."); see also *Risch*, 581 F.3d at 393 (finding that comments regarding a woman's place in the Defendant department "suggest[ed] an atmosphere hostile to the promotion of female officers").

To the extent Defendant makes assertions regarding evidence acquired after Plaintiff's termination, such evidence is irrelevant for the analysis required to decide this motion. An employer's honest belief must be based on "particularized facts that were before it *at the time the decision was made.*" *Seeger*, 681 F.3d at 285 (emphasis added). Any

information acquired after Plaintiff's termination that allegedly supports Defendant's rationale cannot be used to justify Defendant's purportedly honest belief.

Plaintiff has produced sufficient evidence such that a jury could reasonably reject Defendant's explanation that Plaintiff was terminated for allegedly selling drugs at the workplace. See *Chen*, 580 F.3d at 400. Accordingly, there is a genuine issue of material fact as to whether Defendant's rationale was a pretext for termination on the basis of unlawful discrimination.

For similar reasons, Defendant's claim that Plaintiff cannot succeed on a mixed-motive theory of discriminatory employment practice is without merit. "[A] plaintiff can raise a mixed-motive Title VII claim by "demonstrat[ing] that race, color, religion, sex, or national origin was a *motivating factor* for any employment practice, even though other factors also motivated the practice." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 711 (6th Cir. 2006), quoting 42 U.S.C. § 2000e–2(m) (emphasis added). "[T]he ultimate question at summary judgment on a mixed-motive case is 'whether the plaintiff has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that [a protected

characteristic] was a motivating factor in [the defendant's adverse employment action against the plaintiff].'" *Id*. at 713 (citation omitted). As set forth, there is a genuine issue of material fact as to whether Defendant's termination of Plaintiff was a pretext for direct intentional discrimination. Accordingly, Plaintiff presented evidence from which a reasonable jury could logically infer that his race was a motivating factor in Defendant's decision to terminate his employment. See *Ondricko*, 689 F.3d at 651.

For all of these reasons, there is a material question of fact regarding whether Defendant intentionally discriminated against Plaintiff on the basis of race when terminating Plaintiff, and Defendant's motion for summary judgment on this claim is denied.

### C. Plaintiff's Hostile Work Environment Claim

Plaintiff raises a new claim in his response to Defendant's motion for summary judgment, alleging he was subjected to a hostile work environment in violation of Title VII. (ECF No. 23, PageID.302–304.) Even if Plaintiff's complaint contained "a short and plain statement of the [hostile work environment] claim that w[ould] give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"

such that Plaintiff's hostile work environment claim could survive summary judgment, *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 817 (6th Cir. 2020) (citations and quotation marks omitted), Plaintiff's claim nevertheless fails the exhaustion requirement for Title VII.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [the plaintiff's] EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). However, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.*, quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

In Plaintiff's charge of discrimination provided to the EEOC, Plaintiff stated the earliest date of discrimination was the date of his firing. (ECF No. 20-3, PageID.173, 215.) Additionally, in the section requesting information regarding the alleged discrimination Plaintiff experienced, he solely detailed the timeline of his firing. (*Id.*) Similarly, Plaintiff's intake questionnaire with the EEOC did not include any allegations that Plaintiff was subjected to racial slurs when employed with Defendant. (*Id.* at PageID.176–178, 216–219.) Plaintiff admitted

27

that he was represented by counsel when filing his charge with the EEOC. (*Id.* at PageID.177.) The allegations in Plaintiff's complaint thus exceed the scope of his EEOC charge.

Plaintiff has not satisfied the requirement that an employee exhaust administrative remedies with regard to a Title VII hostile work environment claim prior to pursuing that claim in federal court. Accordingly, Plaintiff is barred from bringing a claim of hostile work environment in this present suit. See *Younis*, 610 F.3d at 361.

## III.   Conclusion

For the reasons set forth above, the Court DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: August 25, 2021              s/Judith E. Levy
Ann Arbor, Michigan                 JUDITH E. LEVY
                                    United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2021.

                                    s/William Barkholz
                                    Case Manager