UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESTON L. SKINNER, II,   U.S. District Court No. 5:18-cv-12708

    Plaintiff,   Honorable Judith E. Levy
        Magistrate Judge Curtis Ivy, Jr.

v.

MICHIGAN ROD PRODUCTS, INC.,

    Defendant.
_____/

**DEFENDANT'S OBJECTIONS TO IMPLICIT BIAS
JURY *VOIR DIRE* INSTRUCTION**

**INTRODUCTION**

An implicit bias instruction may be advisable in other kinds of cases, but not this one. The focal point of this trial will be Defendant's decision making and whether it was influenced by discriminatory animus. The implicit bias instruction (which Plaintiff did not request) informs jurors that, as a matter of empirical fact, all individuals have implicit bias and engage in biased decision making.[1]

Given the parallels, an implicit bias instruction creates a risk of severe prejudice to Defendant, potentially influencing jurors to find it liable based on implicit bias. That, of course, is not the standard for finding liability under Title VII or Elliott-Larsen, which outlaws only *intentional* discrimination. But that only highlights a second problem with giving an implicit-bias instruction in this type of case—there is a strong likelihood it will confuse the jury. Compounding those troubles is the very real concern that, according to implicit-bias researchers, merely informing jurors about implicit bias does not actually modify behavior (the instruction's putative goal). Given the questionable value of the instruction and the high likelihood of prejudice and juror confusion in this type of case, this Court should forgo giving it in this case. The same goal of eliminating juror bias—which Defendant supports—can be achieved through standard jury instructions that are not in dispute here.

---

[1] For reference, a copy of the proposed jury instruction on implicit bias is attached as Exhibit 1.

## LEGAL STANDARD

"Proper jury instructions should adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision."[2] Although district courts have some leeway in carrying out this task, that leeway is not unbounded. For example, a jury instruction may present a balanced, objective articulation of each party's distinct legal theories, but it cannot espouse "particular views of the facts."[3] And a trial court commits reversible error if it's instruction to the jury "viewed as a whole is confusing, misleading, and prejudicial."[4]

## ANALYSIS

Defendant objects to the court's implicit-bias instruction for four reasons.

***First, it is extremely prejudicial***. This jury instruction may be appropriate in other kinds of cases where a party's membership in a protected class is (or should be) irrelevant to the jury's determination,[5] but decisionmaker bias is the central issue jurors are asked to decide in Title VII discrimination cases. Instructing the jurors that, as a matter of fact, *all* people have implicit bias runs the risk of giving

---

[2] *Scozzari v. City of Clare*, 653 F. App'x 412, 418 (6th Cir. 2016) (internal quotation marks omitted).

[3] *United States v. Chowdhury*, 169 F.3d 402, 407 (6th Cir. 1999).

[4] *Romanski v. Detroit Entmt, LLC*, 428 F.3d 629, 641 (6th Cir. 2005).

[5] But see, infra, at 5–7.

2

judicial imprimatur to Plaintiff's legal and factual theory and weighting the scales against the party accused of harboring bias against an aggrieved plaintiff.

The instruction's example of prototypical biased decision making—disparate assessment of a female applicant's resume as compared to a similarly situated male—has strong parallels to Plaintiff's legal theory and version of the facts. The instruction tells the jurors that the decision makers' disparate treatment of resumes involved a "flawed assessment" that was "influenced" by "unconscious bias." This echoes Plaintiff's theory of the case that, although other white employees engaged in similar misconduct, Defendant's racial bias influenced what Plaintiff views as a flawed investigation into Plaintiff's selling drugs in the workplace and Defendant's decision to terminate Plaintiff. Indeed, Plaintiff argues that Defendant engaged in "racial stereotyping" in terminating the African American Plaintiff for selling drugs. The law permits the court to instruct the jury on each party's distinct legal theories in a balanced, objective manner, but it draws the line at endorsing "particular views of the facts."[6] Although not intended to, this instruction crosses that line in this case, necessarily influencing the jury's decision in a way that prejudices Defendant.

**Second, it is likely to cause confusion**. In a Title VII disparate treatment case, "[t]he ultimate question is whether the employer *intentionally*

---

[6] *United States v. Chowdhury*, 169 F.3d 402, 407 (6th Cir. 1999).

3

discriminated[.]"[7] Put differently, "[d]isparate treatment requires a finding of *intent* to discriminate."[8] And the plaintiff "bears the ultimate burden of persuasion on the issue of discriminatory intent."[9]

But unconscious bias is, by definition, not intentional discrimination. It is *un*intentional discrimination. By instructing jurors that decision makers can be "influenced" by "unconscious bias," and explicitly telling jurors that such decision-making is "flawed" and "harmful," the instruction potentially signals to jurors that the decision makers in this case are guilty of wrongdoing. Jurors could be more likely to judge defendant's actions through the lens of the court's implicit bias instruction and hold defendants to a standard that is different than the law.

Again, Defendant understands that this instruction is not intended to do that. But the risk of this unintended effect is all the same, and the potential for juror confusion is palpable. It would be patently unfair to Defendant to have its conduct judged through the lens of implicit bias when the law outlaws only intentional—or

---

[7] Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146 (2000).

[8] *Nathaniel v. Hertz Location Edition Corp.*, No. 19-cv-11154, 2020 WL 833095, at *6 (E.D. Mich. Feb. 20, 2020).

[9] Daniels v. Bd. of Educ. of the Ravenna City Sch. Dist., 805 F.2d 203, 207 (6th Cir. 1986) (citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

conscious, purposeful—discrimination. It is for this reason that district courts reject requests to give an implicit-bias instruction or testimony in Title VII cases.[10]

***Third, it is potentially misleading***. The instruction states as a matter of fact that "unconscious bias affects everyone." It further states that "[o]nce you understand that it can affect everyone, you will be in a better position to avoid it from impacting your decision-making." It instructs jurors that studies have shown that to successfully combat implicit bias jurors must carefully examine their decisions and ask whether their judgments would have been different if the person were a different age, race, or gender.

But there is considerable debate about this proposition and the underlying premise that implicit bias education will materially reduce implicitly biased behaviors. For example, the American Bar Association's Implicit Bias Task Force provides an "important disclaimer" about implicit bias, stating that the Universities

---

[10] *See, e.g., Jones v. Natl Council of Young Men's Christian Associations of the United States of Am.*, 34 F. Supp. 3d 896, 901 (N.D. Ill. 2014) ("[Plaintiffs] cannot use his opinions to support their intentional discrimination claims, since Dr. Greenwald's opinions speak only to the question of implicit, or hidden, bias—not intentional acts."); *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 WL 4232600 at *9 (W.D. Pa. July 13, 2015) ("[D]isparate treatment claims require proof of a discriminatory motive, which seems incompatible with a theory in which bias may play an unconscious role in decision-making[.]"), *aff'd in relevant part*, 849 F3d 61 (CA 3, 2017); *Jordan v. Cnty. of Clark*, 253 F. App'x 694, 696 (9th Cir. 2007) (affirming refusal to give implicit bias instruction in Title VII case); *White v. BNSF R Co.*, 726 F. App'x 603, 604 (9th Cir. 2018) (emphasis added); *Johnson v. Seattle Pub. Utilities*, 3 Wash. App. 2d 1055 (2018) (affirming decision to exclude implicit bias expert testimony because it "would be confusing and misleading for the jury" deciding an intentional discrimination case).

5

and individual researchers specializing in implicit bias studies "make no claim for the validity of the[] suggested interpretations" of the foundational Implicit Association Test and that "not all researchers are in agreement on the value of the IAT, or on its relevance and significance in terms of actual behavior."[11]

> Indeed, according to a review printed in the Chronical of Higher Education,
>
> Researchers from the University of Wisconsin at Madison, Harvard, and the University of Virginia examined 499 studies over 20 years involving 80,859 participants that used the IAT and other, similar measures. They discovered two things: One is that the correlation between implicit bias and discriminatory behavior appears weaker than previously thought. They also conclude that there is very little evidence that changes in implicit bias have anything to do with changes in a person's behavior.[12]

According to another review by the Scientific American examining the validity of implicit-bias interventions like the one reflected in the implicit bias instruction, "[T]o date, none of these interventions has been shown to result in permanent, long-term reductions of implicit bias scores or, more importantly, sustained and

---

[11] See https://www.americanbar.org/groups/litigation/initiatives/task-force-implicit-bias/implicit-bias-test/.

[12] Tom Bartlett, *Can We Really Measure Implicit Bias? Maybe Not*, The Chronical of Higher Education (Jan. 5, 2017), available at https://www.chronicle.com/article/can-we-really-measure-implicit-bias-maybe-not/?bc_nonce=5ii6cy0yel67eltuhdflkb&cid=reg_wall_signup (accessed Nov 14, 2022), citing Forscher et al., *A Meta-Analysis of Procedures to Change Implicit Measures*, Journal of Personality and Social Psychology (Aug 2019).

meaningful changes in behavior (i.e., narrowing of racial/ethnic clinical treatment disparities)."[13]

Merely identifying the problem of implicit bias may not actually change participants' behaviors. But the instruction does just enough to inform jurors that all people are biased without training them on how to responsibly calibrate their decision making. It informs jurors that implicit bias is ubiquitous and harmful and that they themselves are implicitly biased against people of different races or genders. Without knowing what to do with that new information, jurors are likely to over-correct and may choose to believe individuals in a protected class who are otherwise not worthy of belief solely to avoid being labeled an unconscious bigot or racist. Giving the instruction merely encourages jurors to replace one (assumed) heuristic for another. That will severely prejudice Defendant in defending against allegations of race discrimination by a plaintiff who belongs to a protected class.

***Fourth, it is unnecessary***. This Court will instruct the jurors to reach their decision based on the facts proved to them and on the law given to them, not on sympathy, bias, or personal preference. As other courts have frequently held, there

---

[13] Tiffany Green, et al., *The Problem with Implicit Bias Training*, The Scientific American (Aug. 28, 2020), available at https://www.scientificamerican.com/article/the-problem-with-implicit-bias-training/ (accessed Nov. 14, 2022).

7

is no reason why this time-tested instruction will not accomplish the goals that the court intends to achieve through its experimental implicit bias instruction.[14]

## CONCLUSION

For these reasons, Defendant respectfully asks this Court not to instruct the jury on implicit bias.

    Respectfully submitted,

    KIENBAUM HARDY
    VIVIANO PELTON & FORREST, P.L.C.

    By: */s/ Eric J. Pelton*
        Eric J. Pelton (P40635)
        Michelle Ruggirello (P75202)
    Attorneys for Defendant
    280 N. Old Woodward Ave., Ste. 400
    Birmingham, MI 48009
    (248) 645-0000
    epelton@khvpf.com
Dated: November 15, 2022    mruggirello@khvpf.com

---

[14] *See United States v. Young*, 6 F.4th 804, 809 (8th Cir. 2021); *White*, 726 F. App'x 603, 604 (9th Cir. 2018).

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties on record.

                                        */s/ Eric J. Pelton*
                                        Eric J. Pelton (P40635)
                                        Kienbaum Hardy
                                        Viviano Pelton & Forrest, P.L.C.
                                        280 N. Old Woodward Avenue, Suite 400
                                        Birmingham, MI  48009
                                        (248) 645-0000
                                        epelton@khvpf.com